IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HELEN CAIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 13-663 |
| | ) |
| CAROLYN W. COLVIN, | ) |
| ACTING COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER OF COURT

AND NOW, this 29th day of September, 2014, upon due consideration of the parties' cross-motions for summary judgment relating to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for supplemental security income under Title XVI of the Social Security Act ("Act"), IT IS ORDERED that plaintiff's motion for summary judgment (Document No. 15) be, and the same hereby is, granted and the Commissioner's motion for summary judgment (Document No. 17) be, and the same hereby is, denied. The Commissioner's decision of January 27, 2012, will be vacated and this case will be remanded to the Commissioner for further proceedings consistent with this opinion pursuant to 42 U.S.C. §405(g).

When the Commissioner determines that a claimant is not "disabled" within the meaning of the Act, the findings leading to such a conclusion must be based upon substantial evidence. "Substantial evidence has been defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (citation omitted).

Despite the deference to administrative decisions required by this standard, reviewing courts "'retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner's] decision is not supported by substantial evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (*quoting* Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981)). In evaluating whether substantial evidence supports an ALJ's findings, "'leniency [should] be shown in establishing the claimant's disability, and ... the [Commissioner's] responsibility to rebut it [should] be strictly construed ....'" Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003) (*quoting* Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979)).

Plaintiff protectively filed her pending application for benefits on May 10, 2010, alleging a disability onset date of October 1, 2009, due to, *inter alia*, lower back pain, leg pain, diabetes, depression and anxiety. Plaintiff's application was denied initially. At plaintiff's request an ALJ held a hearing on December 20, 2011, at which plaintiff, represented by counsel, appeared and testified. On January 27, 2012, the ALJ issued a decision finding that plaintiff is not disabled. On March 25, 2013, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

Plaintiff was 41 years old at the time of the ALJ's decision and is classified as a younger person under the regulations. 20 C.F.R. §416.963(c). She has a tenth-grade education which is classified as limited. 20 C.F.R. §416.964(b)(3). Plaintiff has past relevant work experience as a cashier, home attendant and dispatcher/secretary, but she has not engaged in any substantial gainful activity since her alleged onset date.

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ found that although the medical evidence establishes that plaintiff suffers from

AO 72
(Rev. 8/82)

the severe impairments of degenerative disc and joint disease of the lumbar and cervical spine, diabetes mellitus, obesity, hearing loss and major depressive disorder with anxiety, those impairments, alone or in combination, do not meet or equal the criteria of any of the impairments listed at Appendix 1 of 20 C.F.R., Part 404, Subpart P.

The ALJ also found that plaintiff retains the residual functional capacity to perform sedentary work but with a number of physical and environmental restrictions[1] as well as the following mental limitations: she "can perform simple, routine, repetitive tasks in a work environment free of fast-pace production requirements involving only simple work-related decisions and routine workplace changes." (R. 18). In response to a hypothetical question taking into account these restrictions, a vocational expert identified numerous categories of jobs which plaintiff can perform based upon her age, education, work experience and residual functional capacity, including document preparer, ticket taker, gate guard and charge account clerk. Relying on the vocational expert's testimony, the ALJ found that, although plaintiff cannot perform her past relevant work, she is capable of making an adjustment to numerous jobs existing in significant numbers in the national economy. Accordingly, the ALJ concluded that plaintiff is not disabled under the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot,

---

[1] Plaintiff does not challenge the ALJ's residual functional capacity finding with regard to exertional limitations and restrictions or environmental restrictions. Her only challenge is to the ALJ's finding as it relates to limitations arising from her mental impairments.

considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §1382c(a)(3)(B).

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability.[2] 20 C.F.R. §416.920. If the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; see Barnhart v. Thomas, 124 S.Ct. 376 (2003).

Here, plaintiff essentially raises two challenges to the ALJ's determination that plaintiff is not disabled: (1) the ALJ improperly weighed the medical evidence and also failed to discuss plaintiff's Global Assessment of Functioning ("GAF") scores; and, (2) the ALJ's residual functional capacity finding failed to account for all of plaintiff's work-related limitations supported by the record. Because the ALJ's evaluation of the medical evidence is not clear enough to permit this court to undertake meaningful judicial review, and because the court agrees with plaintiff that the ALJ's residual functional capacity finding is inadequate to accommodate all of plaintiff's limitations which the ALJ apparently found, this case must be remanded for additional proceedings.

It is axiomatic in social security cases that, although the ALJ may weigh the credibility of the evidence, she must give some indication of the evidence that she rejects and the reasons for discounting that evidence. Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001). Where

---

[2] The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether she has a severe impairment; (3) if so, whether her impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents her from performing her past-relevant work; and, (5) if so, whether the claimant can perform any other work which exists in the national economy, in light of her age, education, work experience, and residual functional capacity. 20 C.F.R. §416.920(a)(4); Newell v. Commissioner of Social Security, 347 F.3d 541, 545 (3d Cir. 2003). In addition, when there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner must follow the procedure for evaluating mental impairments set forth in the regulations. Plummer, 186 F.2d at 432; 20 C.F.R. §416.920a.

the ALJ fails to consider and explain the reasons for discounting all of the relevant evidence before her, she has not met her responsibilities under the Act and the case must be remanded with instructions "to review all of the pertinent medical evidence, explaining any conciliations and rejections." Burnett v. Apfel, 220 F.3d 112, 122 (3d Cir. 2000).

Plaintiff's first argument is that the ALJ improperly evaluated the medical evidence[3], in particular by giving "no weight" to the report from the consultative examiner, Dr. David Prybock. (R. 361-369). In the decision, the ALJ briefly summarized Dr. Prybock's findings and acknowledged that "Dr. Prybock noted problems with [plaintiff's] ability to interact with the public" and that he "assigned a GAF score of 45." (R. 20). The ALJ acknowledged that the report showed 'severe symptoms" but "none that is not accommodated in the residual functional capacity established here" and concluded that "no weight is afforded these conclusions insofar as they suggest an inability to perform all work activity, particularly for any 12-month period." (R. 20).

Although the ALJ addressed Dr. Prybock's report in her decision, her analysis is insufficient to permit this court to ascertain what portion or portions of Dr. Prybock's report she was assigning "no weight" and for what reason. The court has reviewed Dr. Prybock's report and can glean no suggestion from it that plaintiff is "unable to perform all work activity." Possibly then, the ALJ is rejecting Dr. Prybock's opinion that plaintiff has marked to moderate limitations in various areas of social functioning, as she declined to include any limitations in social functioning in her residual functional capacity finding. However, that is not clear either,

---

[3] Under the Regulations, an ALJ is to evaluate every medical opinion received, regardless of its source, and is required to consider numerous factors in deciding the weight to which each opinion is entitled, taking into account numerous factors including the opinion's supportability, consistency and specialization. 20 C.F.R. §416.927(c). Importantly, the opinion of any physician on the issue of what an individual's residual functional capacity is or on the ultimate determination of disability never is entitled to special significance. 20 C.F.R. §416.927(d); SSR 96-5p.

as earlier in the opinion the ALJ found that plaintiff does have moderate limitations in social functioning.[4] (R 17). Adding to the confusion is the fact that the state agency reviewing psychiatrist's report,[5] which the ALJ indicated was "consistent with the decision and assisted me in coming to the conclusion as to [plaintiff's] residual functional capacity" (R. 21), rated plaintiff as having only mild limitations in social functioning. (R. 380).

Thus, although previously having found that plaintiff has moderate difficulties in social functioning, in evaluating the medical evidence the ALJ apparently rejected the opinion of Dr. Prybock, which would tend to support a finding of at least moderate difficulties in that area, while apparently accepting the opinion of the state agency reviewing psychiatrist, who indicated only mild difficulties in social functioning. Because the ALJ failed to explain adequately her "conciliations and rejections" of the relevant medical evidence, this court cannot undertake meaningful judicial review to determine whether her evaluation is supported by substantial evidence, necessitating a remand for clarification.

The court also agrees with plaintiff that on remand the ALJ needs to discuss in greater detail plaintiff's recorded GAF scores[6] in the range of 45-48, which indicate "serious"

---

[4] The court notes that in making this finding at step 3, the ALJ does not mention specifically Dr. Prybock's assessment nor the assessment of the state agency reviewing psychiatrist.

[5] State agency medical consultants are "highly qualified physicians ... who are also experts in Social Security disability evaluation." 20 C.F.R. §416.927(e)(2)(i). Accordingly, while not bound by findings made by reviewing physicians, the ALJ is to consider those findings as opinion evidence, and is to evaluate them under the same standards as all other medical opinion evidence. 20 C.F.R. §416.927(e)(2)(ii); SSR 96-6p.

[6] The GAF score considers psychological, social and occupational functioning on a hypothetical continuum of mental health. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) (4th ed. 1994). Although the use of the GAF scale is not endorsed by the Social Security Administration because its scores do not have any direct correlation to the disability requirements and standards of the Act, See 65 Fed.Reg. 50746, 50764-65 (2000), as with any other clinical findings contained in narrative reports of medical sources, the ALJ nevertheless is to consider and weigh those findings under the standards set forth in the regulations for evaluating medical opinion evidence. 20 C.F.R. §416.927(c).

symptoms or "serious" impairment in social and occupational functioning, as assessed by both Dr. Prybock, (R. 369), and in the progress notes of Family Services of Pennsylvania. (R. 530-547). Here, the ALJ acknowledged the scores of 45 and 48 but gave no clear indication why she was rejecting them. On remand, the ALJ is not obligated to accept these scores as conclusive of "serious" limitations; indeed, subsequent progress notes from Family Services assess improved scores of 50, 53 and 55 (R. 533; 536; 539), ratings indicative of "moderate" symptoms or "moderate" difficulty in social or occupational functioning. However, if she rejects them she must explain her reasons for doing so.

Finally, after clarifying her evaluation of the medical evidence, including plaintiff's GAF scores, the ALJ must re-assess plaintiff's residual functional capacity.[7] As already noted, the ALJ found that plaintiff has moderate limitations in social functioning and in concentration, persistence and pace. (R. 17). While the ALJ's residual functional capacity finding accounts for plaintiff's moderate difficulties in concentration, persistence and pace by limiting her to "simple, routine, repetitive tasks in a work environment free of fast pace production requirements involving only simple work-related decisions and routine workplace changes" (R.

---

[7] At step 5 of the sequential evaluation process the ALJ must show that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with her medical impairments, age, education, past work experience, and residual functional capacity. 20 C.F.R. §416.920(g). Residual functional capacity is defined as the most an individual still can do in a work setting despite the limitations caused by her impairments. Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001); 20 C.F.R. §416.945(a); SSR 96-8p. In assessing residual functional capacity, the ALJ is to consider all of the relevant medical and other evidence in the case record in determining the individual's ability to meet the physical, mental, sensory and other requirements of work. 20 C.F.R. §416.945(a)(3)-(4); SSR 96-8p. In regard to mental abilities, the ALJ first must assess the nature and extent of the claimant's mental limitations and restrictions and then determine the claimant's residual functional capacity for work activity on a regular and continuing basis. 20 C.F.R. §416.945(c). The ALJ's residual functional capacity finding must "'be accompanied by a clear and satisfactory explication of the basis on which it rests.'" Fargnoli, 577 F.3d at 41 (citation omitted).

18),[8] it does not include any restrictions to accommodate plaintiff's moderate difficulties in social functioning.

The Commissioner acknowledges that plaintiff "is technically correct" that the ALJ neglected to include any limitations relating to social functioning in the residual functional capacity finding, but suggests that this was a mere "oversight" because the ALJ's hypothetical to the vocational expert specified that the "work should be isolated from the public with only occasional supervision and only occasional interaction with coworkers." (R. 47). However, the hypothetical to which the Commissioner now refers was one of two hypotheticals that the ALJ posited to the vocational expert. The second hypothetical, like the ALJ's ultimate residual functional capacity finding, omitted any limitations relating to social functioning, and it was the vocational expert's response to this second hypothetical upon which the ALJ relied in finding that plaintiff could perform the jobs of document preparer, ticket taker, gate guard and charge account clerk. (R. 49-50).

Moreover, the assessment of the state agency reviewing psychiatrist, which the ALJ purportedly accepted, suggests that plaintiff also is moderately limited in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, as well as the ability to complete a normal workday and workweek without

---

[8] Plaintiff's argument that the ALJ's residual functional capacity finding is inadequate to account for plaintiff's moderate difficulties in concentration, persistence or pace is without merit. Case law in this circuit makes clear that in order to accommodate <u>moderate</u> limitations in concentration, persistence and pace, a residual functional capacity finding should, <u>at a minimum</u>, contain a restriction limiting the individual, *e.g.*, to "simple, routine tasks." *See, e.g.*, Parks v. Commissioner of Social Security, 401 Fed.Appx. 651, 655-56 (3d. Cir. 2010)( hypothetical limiting claimant to performing simple, unskilled work with restricted social interactions adequate to account for moderate limitations in social functioning and concentration, persistence and pace); McDonald v. Astrue, 293 Fed.Appx. 941, 946-47 (3d Cir. 2008)(hypothetical limiting claimant to "simple, routine tasks" adequate to accommodate "moderate" limitations in concentration, persistence and pace); Menkes v. Astrue, 262 Fed.Appx. 410, 412-13 (3d Cir. 2008)(no error in hypothetical restricting claimant to "simple routine tasks" to account for moderate limitations in concentration, persistence and pace).

AO 72
(Rev. 8/82)

- 8 -

interruptions and to perform at a consistent pace without an unreasonable number and length of rest periods. (R. 384-385). The ALJ does not discuss these limitations in her decision in evaluating the state agency psychiatrist's report, so this court is unable to determine whether the ALJ's omission of any limitations relating to these difficulties is supported by substantial evidence.

On remand, after a re-evaluation of the medical evidence the ALJ must re-assess plaintiff's residual functional capacity finding, accounting for all of plaintiff's limitations that are supported by the record and must then determine, through the testimony of a vocational expert, whether the claimant can perform any other work which exists in the national economy, in light of her age, education, work experience, and revised residual functional capacity.

Accordingly, for the foregoing reasons, plaintiff's motion for summary judgment will be granted, the Commissioner's motion for summary judgment will be denied, and this case will be remanded to the Commissioner for further proceedings consistent with this opinion.

/s/ Gustave Diamond
Gustave Diamond
United States District Judge

cc: Lindsay Fulton Osterhout, Esq.
521 Cedar Way
Suite 200
Oakmont, PA 15139

Colin Callahan
Assistant U.S. Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219